IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 4:06-cr-00055-RP-RAW |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION |
| | ) | ON DEFENDANT'S RENEWED |
| vs. | ) | MOTION TO SUPPRESS |
| | ) | AS SUPPLEMENTED PRO SE |
| BRADLEY LEE WINTERS, | ) | |
| | ) | |
| Defendant. | ) | |

The above resisted motion [160, 176] is before the Court. The Court held a hearing on February 8, 2008, the principal purpose of which, with respect to this motion, was to determine whether to reopen the suppression record. At the conclusion of the hearing the Court asked for entire state court suppression hearing record, portions of which had been attached to defendant's *pro se* motion supplement attached to Doc. No. 160. Defense counsel asked to have until February 15, 2008 to provide the state court record and that request was granted. The record has not been received and the Court has proceeded to rule on the basis of the record before it.

Defendant was arrested following the stop of his vehicle and subsequent search of his vehicle and person on August 28, 2002 as a result of which a significant quantity of methamphetamine was discovered. He was prosecuted and convicted in state court. His conviction was reversed by the Iowa Supreme Court for violation of defendant's speedy trial rights under Iowa law. State v. Winters, 690 N.W.2d 903, 910 (Iowa 2005). He was indicted in this Court on March 28, 2006 with conspiracy to distribute methamphetamine and

possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. Defendant filed a motion to suppress challenging the validity of the stop of the vehicle he was driving. The issue was whether defendant was stopped for a valid traffic offense or whether the stop was a valid Terry stop. Following hearing the Court, by Senior District Judge Vietor, concluded the state trooper who initiated the stop did not have cause to stop the vehicle for a traffic violation. Judge Vietor also concluded the stop was not a valid Terry stop. In view of this conclusion Judge Vietor found it unnecessary to determine whether the search which followed was unconstitutional. The drug evidence obtained as a result of the stop was suppressed.

The authorities had been tipped off by an informant, since identified (see Doc. No. 192), that defendant and his mother were on their way to Des Moines from Mason City to obtain methamphetamine. Judge Vietor found as follows:

> On August 28, 2002, Iowa Division of Narcotics Enforcement Officer Paul Feddersen was contacted by a northern Iowa law enforcement officer named Wernet advising that defendant and his mother were going from Mason City to Des Moines to meet with an attorney in West Des Moines, and that they would then obtain a quantity of methamphetamine somewhere in Des Moines. Either the name or the address of the attorney was provided. Wernet further advised Feddersen that they would be coming to Des Moines in a 1991 red Pontiac Firebird, License No. 152-LAA.

8/04/06 Suppression Ruling at 1-2. Feddersen passed this
information on to other law enforcement officers, including West
Des Moines police officer Kenneth O'Brien and state agent Steven
DeJoode. Id. at 2. Feddersen, O'Brien and DeJoode testified at the
suppression hearing in this Court as follows concerning the
information with which they had been provided:

> Feddersen
>
> I was contacted around the lunch hour on
> August 28th, 2002 by a task force officer from
> northern Iowa by the name of Logan Wernet. The
> spelling of his last name is W-e-r-n as in
> north -e-t.
> And he advised me specifically that Brad
> Winters and his mother Barbara Query were
> going to be traveling in a '91 Firebird with a
> license plate -- Iowa plate 152 LAA. He
> advised that they were going to be coming to
> Des Moines, Iowa and meeting with an attorney
> in West Des Moines. I don't recall if he gave
> me the name of the attorney or the address of
> the attorney. He gave me one or the other,
> because that's where I eventually found Mr.
> Winters.
> And then Mr. Wernet advised that he was
> going to -- that Mr. Winters and Query were
> going to be receiving a quantity of
> methamphetamine. He may have advised me --
> advised me that it was a half pound of
> methamphetamine, but I don't recall the exact
> amount.
>
> Q.   And did you then -- what did you do with
> that information?
>
> A.   I contacted Special Agent DeJoode,
> Detective Kenny O'Brien and Sergeant Rob
> Johansen to assist in the investigation.

7/18/2006 Hearing Tr. at 81.

O'Brien

Q.   I want to take you back to August 28th or 2002. How were you assigned at that time?

A.   I was assigned to the Mid-Iowa Narcotics Enforcement task force as a narcotics investigator.

Q.   And were you working with Agent DeJoode and Agent Feddersen concerning some narcotic trafficking?

A.   Yes.

Q.   And what information did you originally get and when did you get it?

A.   I want to say it was over the lunch hour I received a phone call from Agent Feddersen and he had described that he had received some information that there were two individuals from the Mason City area that were traveling to West Des Moines, and the information was that they were coming to the Des Moines area to pick up a substantial quantity of methamphetamine and then eventually transport it back to the Mason City area.

Q.   And what were you asked to do?

A.   I was asked to assist with the surveillance of this operation and then -- that initially was the plan, just be to involved in surveilling these individuals.

Q.   Did you have particular information about what type of vehicles you were looking for?

A.   Yes. Agent Feddersen had described the vehicle to me, which was, I believe, a red Pontiac Firebird, and had provided me with a license plate number for that vehicle.

Id. at 59-60.

DeJoode

A.   Special Agent Feddersen had received information from the North Central Iowa Narcotics Task Force that a Brad Winters and his mother, Barbara Query, would be traveling to the Des Moines area to purchase methamphetamine.

BY MR. PAFF:

Q.   And did it fall upon you to follow up on that tip?

A.   Yes, it did.

Q.   And what did you do to follow up on that tip?

A.   We had received specific information that Mr. Winters would be traveling to an attorney's office in the West Des Moines area. Task force members, including Detective Kenny O'Brien, I believe Sergeant Johansen, traveled to the area of the attorney's office and observed the vehicle description which we were given of Mr. Winters, a red Pontiac Firebird.

Q.   Did you have the license plate number also?

A.   Yes, we did.

Q.   And what was that?

A.   License plate was 152 LAA.

Q.   And once you had that information, what did you do next?

A.   At that point we set up surveillance on the parking lot, and waited until Mr. Winters and his mother departed.

7/24/2006 Hearing Tr. at 126-27.

The government appealed the suppression order. The Eighth Circuit reversed, finding a constitutionally valid Terry stop. United States v. Winters, 491 F.3d 918, 922 (8th Cir. 2007). The Eighth Circuit noted it had granted defendant leave to file a *pro se* supplemental brief. In that brief defendant addressed the question Judge Vietor had found unnecessary to determine, whether the search that followed the vehicle stop was unconstitutional. Defendant argued his Fourth Amendment rights were violated by

> (1) "blocking in" the Firebird prior to the stop without probable cause; (2) handcuffing Winters without probable cause; (3) unreasonably delaying his detention before a drug dog arrived; (4) searching his vehicle based upon a dog "alert" that did not provide probable cause; (5) using the dog to search his person without probable cause; and (6) searching his pockets and removing items known not to be weapons.

Id. at 923. Because the government had not responded to the supplemental brief and the district court had not considered these issues, the Eighth Circuit declined to address them but left it to this Court on remand to determine whether the issues had been properly preserved and whether they merited further consideration. Id.

On October 26, 2007 defendant, through counsel, filed a motion to suppress addressing the additional issues defendant had sought to raise on appeal. On November 8, 2007 Judge Vietor denied the motion without further hearing. Judge Vietor found the factual

record made in the July 2006 suppression hearing to be adequate to
address the additional issues. He ruled:

> . . . I conclude that under the factual
> circumstances, all that followed [the valid
> <u>Terry</u> stop] -- the detention, the handcuffing,
> the relatively short delay in waiting for the
> arrival of Bobby, the drug detection dog,
> Bobby's alert on the vehicle and his
> indication of the odor of controlled
> substances emanating from defendant, and the
> search of the vehicle and defendant -- did not
> violate defendant's Fourth Amendment rights.

11/8/2007 Ruling at 2.

Defendant has now filed a renewed motion to suppress, the
motion currently before the Court.

Defendant asks the Court to revisit the <u>Terry</u> stop issue
for two reasons. First, defendant contends that Officer Wernet's
written report of what he told Agent Feddersen about defendant's
trip to Des Moines and its purpose suggests Agent Feddersen made up
the details of the trip to which he testified. Second, he argues
his prior counsel did not adequately plumb the state trooper's
suppression hearing testimony about "furtive movements" defendant
and his mother made at the time of stop which were alleged to
support the suspicion they were engaged in drug trafficking
activity.

The Eighth Circuit's conclusion that law enforcement
officers made a valid <u>Terry</u> stop of defendant's vehicle is the law
of the case which ordinarily should not be disturbed absent an
intervening change in controlling authority. <u>Baranski v. United</u>

7

States, ___ F.3d ___, 2008 WL 141154, *3 (8th Cir. Jan. 16, 2008);
see United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995)("all
issues decided by the appellate court become the law of the case");
18 Moore's Federal Practice § 134.20[4] at 134-50 (3d ed.
2007)("[a]s to decisions of law, the interlocutory appeal
establishes the law of the case"). "It is well settled that when a
matter is decided by [the court of appeals], it becomes the law of
the case; the district court is not free on remand to reconsider
any question finally disposed by the court of appeals." Pediatric
Specialty Care, Inc. v. Arkansas Dept. of Human Serv., 364 F.3d
925, 931 (8th Cir. 2004). However, the law of the case doctrine and
its "subspecies," the "mandate rule," do have a few exceptions.
Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., 896 F.
Supp. 912, 914 (E.D. Ark. 1995). Absent a change in the law, which
has not occurred

> . . . a decision in a prior appeal is followed
> in later proceedings unless a party introduces
> substantially different evidence, or the prior
> decision is clearly erroneous and works a
> manifest injustice.

United States v. Callaway, 972 F.2d 904, 905 (8th Cir. 1992)(per
curiam); see United States v. Palmer, 297 F.3d 760, 766 (8th Cir.),
cert. denied, 537 U.S. 1143 (2002)(quoting Callaway); Bartsh, 69
F.3d at 866 (same). The substantially different evidence should be
new evidence. Federated Rural Elec., 896 F. Supp. at 914 (citing
Bethea v. Levi Strauss and Co., 916 F.2d 453, 457 (8th Cir. 1990)).

8

If it were shown the appellate <u>Terry</u> stop holding was the product of perjured or fabricated evidence, a finding that the appellate holding was clearly erroneous and resulted in manifest injustice might well be in order. Officer Wernet's written report, however, is far short of supporting an inference that Agent Feddersen fabricated the information he attributed to Wernet. It is also not substantially different from the testimony at the suppression hearing.[1] Officer Wernet's report states:

> ON 08/28/02 THIS OFFICER RECEIVED INFORMATION FROM C.I. #1 THAT BOTH BARB AND BRAD WERE MAKING A TRIP TO DES MOINES, IOWA TO PURCHASE A LARGE AMOUNT OF METHAMPHETAMINE TO BRING BACK TO MASON CITY TO DISTRIBUTE. THE TWO WERE GOING TO DRIVE THE 1991 FIREBIRD THAT BRAD OWNS. I CALLED THE IOWA DEPARTMENT OF NARCOTICS ENFORCEMENT AND ALERTED THEM TO WATCH FOR THE VEHICLE. I RECEIVED A CALL BACK FROM THEM STATING THAT THEY HAD LOCATED THE VEHICLE SITTING AT A RESIDENCE IN DES MOINES. I RECEIVED ANOTHER CALL FROM THEM STATING THAT THEY HAD STOPPED THE VEHICLE WHEN IT LEFT THE

---

[1] Defendant contends he did not have access to Officer Wernet's report until after the suppression hearings. For the purposes of the present motion the Court assumes this to be the case though since the report was presumably made at or about the time Wernet relayed his information to Agent Feddersen it is difficult to believe it would not have been available to defendant at the time of the suppression hearing, and indeed in connection with the suppression hearing held in state court. The Court notes Officer Wernet's report was attached to defendant's *pro se* supplement to Doc. No. 160 indicating he had it in his possession. There is also a file stamp on the document with the date January 3, 2003 but with the name of the entity with which it was filed crossed out. The selective and edited documents attached to defendant's *pro se* supplement from what appears to have been the suppression hearing record in state court on the same issues was the reason the Court asked for the entire state suppression hearing record.

> RESIDENCE AND IDENTIFIED THE OCCUPANTS AS BARB
> QUERY, AND BRAD WINTERS. THEY HAD ALSO LOCATED
> ABOUT 215 GRAMS OF SUSPECTED METHAMPHETAMINE
> IN THE VEHICLE. THE SUBSTANCE TESTED POSITIVE
> FOR METHAMPHETAMINE IN A NIK KIT.

Attach. 1 to Defendant's Renewed Motion to Suppress [160]. While Officer Wernet's report says nothing about a license plate number, a meeting with an attorney, or the address of the attorney's office, the mere omission of these details does not suggest Agent Feddersen manufactured them. There is nothing in Wernet's report inconsistent with what Feddersen said he had been told. Feddersen, Officer O'Brien and Agent DeJoode were generally consistent with respect to the information they had in hand concerning the purpose of defendant's trip to Des Moines and his activities. They found defendant's car at the attorney's office. Defendant does not suggest how Feddersen would have known to locate defendant at the attorney's office unless he had been told by Officer Wernet.[2] Defendant has not come forward with evidence which would allow the Court to reconsider the Eighth Circuit's Terry stop holding under an exception to the law of the case doctrine or mandate rule.

The second reason put forward to revisit the Terry stop issue is clearly insufficient. Essentially, defendant wants a second opportunity to cross-examine the state trooper who made the

---

[2] The significant detail Agent Feddersen had been provided with was that defendant would meet with an attorney and then acquire methamphetamine. When the officers observed defendant's vehicle at the attorney's office, the information from Officer Wernet was "significantly corroborated." Winters, 491 F.3d at 922.

vehicle stop to impeach his suppression hearing testimony that defendant and his mother made "furtive movements" consisting of both reaching down toward the center console, with defendant making a "kind of a ducking and tucking his shoulder" movement. 7/18/2006 Hearing Tr. at 32, 46. Defendant complains his prior counsel should have brought out the possibility that defendant was simply reaching down to put the vehicle into "park." Defense counsel cross-examined the trooper about what was "furtive" in the movements he observed. Id. at 46. The movements in question had been captured on the video camera in the trooper's patrol car and the videotape was played for the Court. Id. at 32. The Court saw what the trooper was referring to and could make up his own mind.

Defendant's renewed motion also asks the Court to reconsider Judge Vietor's November 8, 2007 ruling that the search which followed the Terry stop did not violate defendant's Fourth Amendment rights, a subject the Eighth Circuit did not address. Other than seeking to reargue the conclusions reached by Judge Vietor, defendant states his prior counsel should have brought out that in the state suppression proceedings, the state trooper testified defendant was compliant in keeping his hands where they could be seen whereas Agent DeJoode testified he decided to handcuff defendant in part because defendant was moving around the vehicle in a way which led DeJoode to be concerned about "everybody's safety" and had not complied with the trooper's

request that defendant keep his hands where they could be seen. 7/24/2006 Hearing Tr. at 135. The transcript of the state suppression hearing should have been available to defendant at the time of the suppression hearing in this Court. The Court also had an opportunity to see what DeJoode was referring to recorded on the videotape from the camera in the trooper's patrol car. The inconsistency between Trooper Griggs' testimony and that of Agent DeJoode does not warrant reconsideration.

Defendant next requests an opportunity to present expert testimony on the issue of whether the drug dog alerted and the reliability of the dog in question. At the suppression hearing on cross-examination of the dog handler defense counsel brought out that the dog was not "his usual self" that day and was later found to have a large, softball-sized blood pocket in his head which was treated by a veterinarian. The credibility of the dog's alert to the presence of methamphetamine and his reliability were thus before the Court. Whether expert testimony would add anything is speculative.

Lastly, defendant points out that at the state suppression hearing the trooper testified that when he saw the very large bulge in defendant's right front pocket he made a mental note of possible narcotics and did not say anything about a weapon. In the federal suppression hearing Officer DeJoode testified that the bulge in defendant's pocket was one of the reasons he had a safety

concern which prompted him to handcuff defendant. 7/24/2006 Hearing Tr. at 135. Again, this arguable inconsistency, which could have been developed in connection with the suppression hearing in this Court, does not warrant reconsideration of Judge Vietor's ruling.

For the foregoing reasons **IT IS RECOMMENDED** that defendant's renewed motion to suppress be denied.

In view of the trial date the Court will accelerate the time for objections. **IT IS ORDERED** that the parties have **until February 28, 2008** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 21st day of February, 2008.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE

13